IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SOUTHERN COOS HOSPITAL AND HEALTH   Civ. No. 05-6159-HO
CENTER,
                                    ORDER
    Plaintiff,

v.

EXECUTIVE RISK INDEMNITY, INC.,

    Defendant.

Plaintiff Southern Coos Hospital and Health Center seeks judgment declaring, <u>inter alia</u>, that defendant Executive Risk Indemnity, Inc. is required under the terms of an insurance policy to pay plaintiff's defense costs in a case filed by plaintiff's former employee. The parties filed cross motions for summary judgment. Based on the undisputed facts, policy provisions operate to deem the employee's case a claim first made prior to the policy period. Because the policy does not cover losses from such a claim, defendant's motion is granted and plaintiff's motion is denied.

Undisputed Facts

Defendant issued policy number 8168-8369, the "Directors, Officers and Trustees Liability Insurance Including Healthcare Organization Reimbursement Policy" (the policy). The policy period is January 1, 2003, to January 1, 2004. The parties characterize the policy as a "claims-made" policy.

Section II of the policy defines "claim" as

> (1) written notice received by Insured that any person or entity intends to hold an Insured responsible for a Wrongful Act, or (2) a legal, injunctive or administrative proceeding against an Insured Person solely by reason of his or her status as such.

Pl's Ex. 4 at 3. "Insured" means the Insured Entity and any Insured Person. Id. at 4. "Defense Expenses" are defined as "reasonable legal fees and expenses incurred by an Insured in defense of a Claim, except that Defense Expenses shall not include remuneration, overhead or benefit expenses associated with any insured." Id. "Loss" is defined as "any amount, including Defense Expenses, in excess of the applicable retention and not exceeding the Limit of Liability which an Insured is obligated to pay as the result of a Claim . . ." Id. Under endorsement number 15, the policy definition of "Wrongful Act" includes an "Employment Practices Wrongful Act," as the latter term is defined in endorsement number 15.

"Employment Practices Wrongful Act" means any actual or alleged employment discrimination, employment harassment,

2 - ORDER

retaliation, workplace tort, wrongful employment decision, or wrongful termination committed, "attempted, or allegedly committed or attempted by an Insured Entity or by an Insured Person in his or her capacity as such." Pl's Ex. 4 at 8-9.

The policy provides that the "underwriter will pay on behalf of the Insured Entity Loss from Claims first made against Insured Persons during the policy period which the Insured Entity pays to or on behalf of the Insured persons as indemnification." Pl's Ex. 4 at 3.

Under the condition regarding limit of liability, retention, payment of loss, the policy provides,

> All Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events shall be deemed to be a single Claim made at the time the earliest such Claim is made. A Claim shall be deemed made when the Underwriter is notified under IV. CONDITION (F) or when such Claim is first made or asserted against an Insured, whichever first occurs.

Pl's Ex. 4 at 6-7.

Condition (F), regarding Notice of Claim or Circumstances, provides,

> (1) If during the Policy Period any Claim is made, as a condition precedent to their right to payment the Insureds shall give the Underwriter written notice by certified mail of such Claim as soon as practicable after such Claim is first made.
> (2) If during the Policy Period an Insured first becomes aware of any circumstances which may subsequently give rise to a Claim against any Insured

3 - ORDER

> and, as soon as practicable thereafter but before the
> expiration or cancelation [sic] of the Policy, gives
> the Underwriter written notice by certified mail of
> such circumstances with full particulars of the
> specific Wrongful Act involved, then a Claim
> subsequently made against an Insured arising out of
> such Wrongful Act shall be deemed made during the
> Policy Period.

Def's Ex. A.

Linda Cotton worked for plaintiff from November, 2000, until June 17, 2002. On April 11, 2002, Cotton's attorney sent a letter to Jim Wathen, plaintiff's CEO. The letter addresses, among other things, Cotton's employment history with plaintiff, plaintiff's hiring of Kelly Herrick, who became Cotton's supervisor, Cotton's concern about Herrick's alleged lack of nursing kills and disregard of physicians' orders, Herrick's alleged harassment of Cotton, Cotton's difficulty returning to work after surgery, Cotton's alleged demotion and change of schedule (upon return to work) by Joan Calhoun, Director of Nursing Services, plaintiff's denial of Cotton's transfer request, Herrick's alleged accusations that Cotton had an inappropriate relationship with another supervisor, Herrick's alleged statements that Cotton should not speak with plaintiff's administration without first telling Herrick, and plaintiff's alleged failure to protect Cotton from harassment and retaliation, causing Cotton to suffer extreme emotional distress and to require medical treatments and medical leave.

The April, 2002 letter also contends that Herrick and

4 - ORDER

Calhoun made slanderous accusations about Cotton in order to get her fired, clearly violated Cotton's rights to medical leave, and discriminated and retaliated against her by demoting her and changing her hours upon her return from medical leave. The letter requests that plaintiff investigate Herrick and Calhoun's actions, take appropriate disciplinary action, provide appropriate training, thank Cotton for coming forward with her concerns, place Cotton in a position where she does not have to report to Herrick or Calhoun, return Cotton to her former schedule, reimburse Cotton for her medical bills and attorney fees, pay for counseling expenses for Cotton for six months, compensate Cotton in an agreed sum for extreme emotional distress suffered since January, 2002, remove any disciplinary actions from Cotton's personnel file, and protect Cotton from further retaliation and harassment.

Plaintiff's compliance officer, Randy Scholten, responded to the April, 2002 letter on May 31, 2002. Scholten's response indicated that plaintiff had completed an investigation of the allegations of discrimination. Scholten responded to each of Cotton's allegations against plaintiff and its employees. His response states that the "issues raised by Ms. Cotton which were found to have merit have been addressed with the affected employee, and corrective action taken."

Plaintiff filed a complaint with the Bureau of Labor and

Industries (BOLI) on July 16, 2002. The BOLI complaint sets forth substantially the same allegations as the April, 2002 letter, with additional allegations concerning events that took place after April 11, 2002, including Cotton's alleged resignation on July 17, 2002. The BOLI complaint states,

> I believe I have been discriminated and retaliated against and subjected to hostile work environment because I reported the actions of Ms. Herrick which I believed to pose a risk to the health, safety and welfare of patients, and because I asserted my right and exercised my right to family medical leave.

The BOLI complaint process includes the following components: contact BOLI; fill out a questionnaire; review complaint; investigation; fact-finding conference; conciliation; substantial evidence determination; and administrative hearing.

On August 11, 2002, plaintiff's counsel sent a letter to BOLI in answer to the claims in the BOLI complaint. Cotton withdrew her BOLI complaint on June 30, 2003. There is no evidence that BOLI proceeded past the investigation stage on plaintiff's BOLI complaint. A letter from BOLI to Cotton with mailing date July 16, 2003, informs plaintiff that the BOLI complaint is dismissed, based on her withdrawal of the complaint, plaintiff has the right to sue in state court for violations alleged in the complaint, and the right to sue is lost after 90 days from the mailing date. Pettit Aff., Ex. F.

Cotton filed suit against plaintiff in this court on October 10, 2003 in case no. 03-6305-AA. The allegations in the

6 - ORDER

underlying complaint are substantially the same as those alleged in this April, 2002 letter and the BOLI complaint. The underlying complaint alleges causes of action for violations of the federal Family Medical Leave Act (FMLA), Oregon statutes, including the Oregon FMLA, health and safety hazard reporting statutes, hospital administration statutes, and wrongful discharge. The complaint alleges damages exceeding $63,000 in lost wages and benefits and damages up to $500,000 due to mental anguish and emotional distress.

On October 28, 2003, plaintiff submitted a "Renewal Application for Directors, Officers and Trustees Liability Insurance Including Healthcare Organization Reimbursement" signed by James Wathen. The renewal application included an Employment Practices Liability Supplemental Application that asked whether, during the last five years, there had been any "claims" against plaintiff, its directors, officers, employees, or staff, for wrongful termination, employment-related discrimination, sexual harassment, or retaliatory treatment against employees, including complaints filed with the Equal Employment Opportunity Commission or similar state authorities. In response to that inquiry, plaintiff marked "yes," and attached an addendum including the following explanation.

> One claim was filed in August, 2002, alleging
> discrimination and retaliation against an employee and
> existence of hostile work environment because employee
> asserted and exercised her right to family medical

7 - ORDER

leave. Complainant filed a claim with the State Bureau of Labor and Industries in early August, 2002. Defendant's attorney responded to the claim that same month. The claim remained inactive and was later withdrawn by the claimant in May 2003.

On November 7, 2003, plaintiff notified defendant that Cotton filed suit against plaintiff in case number 03-6305-AA. By letter dated December 5, 2003, defendant denied coverage. Pl's Ex. 6. The letter refers to policy provisions requiring an insured to give written notice of a claim to the underwriter "as soon as practicable after such Claim is first made," and further states that the claim falls outside the current policy period. Plaintiff filed this suit seeking coverage under the policy issued by defendant in effect from January 1, 2003, to January 1, 2004.

## Discussion

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(C).

The parties dispute whether under the policy Cotton's lawsuit is a claim first made against an insured person in 2003 during the policy period, or whether it is deemed a claim first made by Cotton's attorney's 2002 letter, or Cotton's 2002 BOLI complaint. See Pl's Ex. 4 at 3. Resolving this dispute requires interpretation of the policy, a question of law. St. Paul Fire & Marine Ins. Company, Inc. v. McCormick & Baxter Creosoting Co.,

8 - ORDER

923 P.2d 1200, 1205 (Or. 1996).

The April 11, 2002 attorney demand letter, the 2002 BOLI complaint and the 2003 district court complaint are "claims" within the meaning of the policy. They each constitute "written notice received by Insured that any person or entity intends to hold an Insured responsible for a Wrongful Act." Pl's Ex. 4 at 3. The demand letter and district court complaint ask for damages. The BOLI letter accompanying plaintiff's BOLI complaint advises that the matter may be resolved through a conciliated agreement involving mutual consideration. It is undisputed, and a reasonable jury could only find, that the district court complaint asserts substantially the same facts as the demand letter and the BOLI complaint. The policy deems the district court complaint a claim first made when plaintiff received the demand letter in April, 2002. Pl's Ex. 4 at 6-7. The policy does not cover losses from claims first made prior to the policy

///

///

///

///

9 - ORDER

period. Id. at 3. Losses from the district court complaint are therefore not covered.

## Conclusion

Based on the foregoing, defendant's motion for summary judgment [#10] is granted; plaintiff's motion for summary judgment is denied [#14]. This proceeding is dismissed.

IT IS SO ORDERED.

DATED this 12th day of January, 2006.

Michael R. Hogan
United States District Judge